The opinion of the court was delivered by
Duncan, J.
When the objection was first made, that there could not he a verdict and judgment for the plaintiff quod compxitent,. unless the jury found a joint liability of the defendants to Tender an account, I was impressed with the opinion that it was unanswerable. It seemed to me that it would be unsettling first foundations, to say that one man should be answerable for another, where there was no express contract, and where, from the nature of the consideration, there could be none implied. I did not then believe it to be the law, and so I instructed the jury, that on the plea of never bailiffs or receivers of the plaintiff, unless they found that this was a house of partnership, consisting of two' parties, the plaintiff one and the defendants the other, their-yerdiet should be for the defendants; for if this was-a partnership of three,— Whelen holding one half, Watmough one fourth, and Downing one fourth, then Watmough would not be bound to account for Downing, nor ‘Downing for Watmough. It then appeared to *156 me that this was not a technical objection to the mere form of action, but one of substance; and that if the verdict was for the plaintiff, that the defendants should account, the judgment must be quod computent and that the report of the arbitrators must follow the judgment, which, being joint, the report must be joint. I did not then conceive the second judgment in account render could be different from the first judgment, and separate judgments rendered against each defendant, and that there might be different executions: nay, that one defendant on this joint contract might be discharged, and the other charged. All this appeared new and strange to me; but as the action was not much in use, and as there were some peculiarities in the action and the judgments, and not many decisions to be found in the books, but only notes and hints clashing with each other, and the more we look into the books, as was said by Welles, C. J., in Godfrey v. Saunders, 3 Wils. 113, the more difficult it seems to reconcile them, the point was reserved,—my mind was open to conviction, and my curiosity was whetted to find out some anomaly in the law, if it had ever existed. The laborious researches of the counsel for the plaintiff have failed in producing any case, or even obitur dictum, to support the proposition that the action of account ren.der did present such incongruity. I have taken some pains to examine both the ancient and modern books on this subject. In the modern, there is hot much to be found on this action, but enough to show that the anomaly did not exist; and the ancient books abundantly prove that in no period of the history of the law it ever did exist.
Whatever may have been the inconveniences of this action, it is not chargeable with those pointed out; for each party interested may have his separate action for his own interest, against every one who has received his money, and recover from him that portion which has come into his hands unaccounted- for by him. I cannot agree with the learned judges of Connecticut, that when there are more than-two partners, the action of account render will not lie. But if it were even so, it would not move me, because the party in this state might find it difficult to procure redress, to suppose that the court could change the law, much less, that a judge at Nisi Prius could undertake to "change the nature of the action. Undoubtedly, in the case of intricate actions, where there is a court of equity, parties have usually sought redress there, because in that court the remedy is more adequate, relief is not embarrassed wdth the difficulties which would incumber it in a court of law; but I do not think judicial authority would change the nature of the action. For, if they could do so, then they might make a very convenient regulation, that the first jury should ascertain the sum, and the first -judgment be a final one. This court has decided, that the mode of conducting the action shall be according to the principles and practices to be found in the books, and corrected a practice that had before prevailed. *157 The entries and hooks of practice remain then as our only guide. The law wants no reformation in this particular; for it is, that e^ch man should render to each man a just account. The finding of the jury excludes all conclusion of joint liability: it necessarily finds a separate liability; for so was it put to the jury. But a separate liability which cannot be enforced through the medium of a joint action; for if Watmough and Downing can be brought into court together in this joint action, the plaintiff might bring all his receivers to account in one action, and auditors find the several balances due by each, and include every name in the city directory. If two men are intrusted with the goods of another, to merchandize, a confidence is placed in both. They accept the trust jointly, and jointly confide in one another. The receipt of one is the receipt of another, and therefore it is a joint receipt. Both are liable, for by implication each has undertaken to account for the other; and that is the very marrow and substance of Godfrey v. Saunders. Saunders, who survived.Solomons his co-partner, was held responsible for his acts and embezzlements; because, as the court said, they were co-obligors, and answerable for one another for the whole. But here the verdict negatives all this. It finds that John Watmough and dindrew Downing were not co-obligors; that one was not surety for the other, and that, of consequence, each man of them is liable for his own receipts. The fact is, if this action could be sustained, then Watmough might have brought his action of account render against Whelen and Downing, or Downing his against Whelen and Watmough, and made Whelen the security of each of the others. ' The case of Godfrey v. Saunders goes far to prove the law of that day as I have stated it; for it must be admitted that the judgment here would be quod computent,—not that Watmough should render an account for his receipts and Downing a separate account for himself. Where two are judged to account, and one is outlawed and the other, accounts, if he discharges himself upon the account, this shall be a discharge of the other; and if he be charged on the account, this shall charge the other, because they were adjudged to account jointly. 41 Edw. 3. 13 b. Br. Acc. pl. 10. Fitzg. Acc. pl. 23. 1 Mallory Plead. 69. 1 Rol. Abr. 173. Vin. Acc. Discharge before Auditors, pl. 3.; and, in the same page, if two in a writ of annuity are judged to account, and one is afterwards outlawed, the other shall account, because they were judged to account jointly. So, if two are judged to accqunt, and- one dies, the other shall account alone. And for this reason, because the receipt of one is the receipt of both. 1 Browne, 25. Where two are accountable, an account made by one is not good: for both the accountants shall make but one account: Cited by Coke, as the case of Gore v. Dowling, in the Exchequer Chamber, upon a writ of error. 1 Leon. 234. If an account be against two; and one pleads that he was sole receiver, and had accounted before such an auditor, if the plaintiff replies, *158 unto his bar, he shall abate his writ, because the receipt is suppog|cl to be a joint oiie. Godb. 43, pl. 50. Cro. Jac. 410. 1 Rol. Rep. 421, proves clearly two things,—first, that where there are three partners in thirty-eight, tuns of wine, each concerned one third in value, that any of them might bring his action of account render against any other of them; and, secondly, that one of them might have his action of account alone, without his companion. See 1 Mallory, 71, Plead, tit., Rules and Observations in cases of Account Render; in which this case is so noticed. It appears by the report of Cro&e, that the exception was taken, that the plaintiff demanded a third part of such goods: whereas he alone ought not to demand the account, but ought to join the other with him, and if he should have it sole, yet he ought, to demand the account for them entire, and not to demand it of the third part,—Sed non allocatur. For it was held he might sue, though his companions would not, and that he might demand an account of the third part. These authorities fully prove, that a judgment quod computeni is a joint judgment, or a joint receipt, and that only one account can be rendered. And whoever will take the pains to examine the pleadings in Godfrey v. Saunders, 1 Wils. 94, will find it to be this very case. It was an action of account against Saunders, to render an account of the time in which the defendant and one Solomons, then deceased, was the bailiff of the plaintiff. 5n his third plea, the defendant pleads that he left the coral beads in the hands of Solomons, who alone was answerable. To this plea, inter alia, the plaintiff replied, that the consignment was made to and accepted by the defendant and Solomons, as joint factors, and upon their joint credit. The jury found for the plaintiff on all the issues. The defendant tendered the same plea, in effect, before the auditors; but held that he was concluded on the face of the record, and that this plea was contradictory to the finding of the jury, and nothing could be pleaded before the auditors contrary to the verdict of the jury. So, if the jury had found for .the plaintiff here, they would have found a joint, liability, and the defendants would not be suffered to plead a separate liability before the auditors; for that would have been to admit a matter to be pleaded again, which had been litigated and tried, and which would contradict the record.' The act of the 30th of March, 1821, Purd. Dig. 24, relating to proceedings in actions of account render, extending the power of arbitrators to this form of action, proceeds on the same.principle. It gives them a power not possessed by a jury; that is, to report a balance due to plaintiff or defendant, one balance, not several balances; and the idea of reporting and giving several judgments, and issuing several executions against several defendants for respective balances, was never in the mind of the framers of that act. The account to be reported is to result in a balance, either to one party or the other, and for this there is to be one final judgment. There is no machinery in the arbitration *159 system to work it in any other way, no provision for appeal in any other way. Where the plaintiff' sets out in a joint action a joint contract, it never can be split up into several causes of action, in which different sums may be given,—nor several executions issue on a joint judgment for different sums of money. The action of account render is founded on a contract, express or implied. 3 Yeates, 251. The liability to account for the profits of an infant’s estate, is said to be an exception. And, as to the power of the court to change that which by the law of the land is established as a course of judicial proceedings, I must deny it. No power short of the -legislature can change -that. The case of Griffith v. Willing and others, on which the plaintiff’s counsel so much rely, was in direct accordance with the principle of joint action in this case. The parties there, were Nicklin and Griffith on the one side, in the connexion, and Willing and Francis, Gilmore and Bingham, on the other side, concerned in a large cargo, the funds of which belonged to those two parties in equal moieties. They were two houses concerned in the transaction; two partners, Nicklin and Griffith, one; Willing and Francis, and their associates the other. The latter were jointly accountable to the former. In the precedent from Pleader’s Assistant, it was a declaration by the owner of land against two jointenants, as bailiffs, jointly bound to render a share of the profits of the land to the landlord, the plaintiff. But- this was a tripartite partnership,— Whelen one half, Watmough one fourth, and Downing one fourth. It is the opinion of the court, that the exceptions to the charge have not been sustained; and the verdict,,it is admitted, is not against the evidence. Something was said in the conclusion of the argument, as to double pleas. Never bailiff or receiver is the general issue, because it goes to the root of the action: fully accounted, is like the plea of payment added to the general issue. Non est factum or non assumpsit, the plea of payment added to non est factum, does not admit the deed: it puts that in issue. So, never bailiff or receiver denies accountability. It is .no more than saying, “We never were joint bailiffs and receivers; but if you prove we were, then we will1 show that we have fully accounted.” The jury were told, that if they found the defendants to be joint bailiffs and receivers of the plaintiff, their verdict should be for him; for if they were joint bailiffs and receivers, they had not fully accounted. This is not the first time this kind of objection has been raised in this court. In 5 Serg. & Rawle, 411, a similar objection was made and overruled, if, because the defendants have added a plea of fully accounted, they acknowledged the liability to account, it would be an admission of record, and the jury would be confined to the inquiry on the plea of fully accounted. We have in this state allowed this mode of pleading, as in non est factum to an obligation, and payment. The deed is not admitted, for that is for the jury to find. If -they do find the *160 deed, then the inquiry is, as to. payment on the second plea. It is the common course so to proceed in account render. There is a common sense rule in these things. They are considered as distinct and independent pleas, and to be proved as if each had stood alone. This is our practice and our law. It is therefore the opinion of the court, that the rule should be discharged and judgment entered on the verdict.
Rule discharged.